IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD C. ALEXANDER, | 2:11-cv-00025-GEB-DAD |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S ANTI-SLAPP MOTION, AND DISMISSING PLAINTIFF'S FIRST AMENDED COMPLAINT WITH PREJUDICE |
| A&E TELEVISION NETWORKS, LLC, and DOES I through XXX, inclusive, | |
| Defendants. | |

Defendant moves under California Civil Procedure Code section 425.16 (California's "anti-SLAPP" statute) for an order striking Plaintiff's defamation claim in his First Amended Complaint ("FAC"), which is the sole claim. Plaintiff opposes the motion. Plaintiff's defamation claim concerns Defendant A&E Television Network's ("Defendant") use of a photograph of Plaintiff in a television program called Gangland.

**I. Legal Standard**

"California's anti-SLAPP statute permits . . . dismiss[al of] meritless defamation cases 'aimed at chilling expression through costly, time-consuming litigation.'" Price v. Stossel, 620 F.3d 992, 999 (9th Cir. 2010) (quoting Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839 (9th Cir. 2001)). This "statute can be invoked by defendants who are in federal court on the basis of diversity jurisdiction." Id. Subject

matter jurisdiction over this action is based upon diversity of citizenship.

When deciding an anti-SLAPP motion "the court . . . engage[s] in a two-step process." Equilon Enters. v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002).

> First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of . . . free speech under the United States or California Constitution in connection with a public issue," as defined in the statute.

Id. (quoting CAL. CIV. PROC. CODE § 425.16(b)(1)). "The phrase 'act . . . in furtherance of the person's right of . . . free speech under the United States or California Constitution in connection with a public issue' is defined by four specific categories of communications." Hilton v. Hallmark Cards, 599 F.3d 894, 903 (9th Cir. 2010) (citing CAL. CIV. PROC. CODE § 425.16(e)(1)-(4)). The relevant category in this case "is the fourth, catch-all category: 'any other conduct in furtherance of the exercise of the . . . constitutional right of free speech in connection with a public issue or an issue of public interest.'" Id. (quoting CAL. CIV. PROC. CODE § 425.16(e)(4)).

Second, "[i]f the court finds . . . a showing [under step one] has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." Equilon, 29 Cal. 4th at 67.

> "[T]he plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant; though the

> court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim."

Manufactured Home Cmtys., Inc. v. Cnty. Of San Diego, --- F.3d ----, 2011 WL 3771277, at *4 (9th Cir. 2011) (quoting Wilson v. Parker, Covert & Chidester, 28 Cal. 4th 811, 821 (2002)).

## II. Background

Gangland is a "documentary television series" that Defendant airs on one of its cable television networks. (Decl. of Douglas S. Kneissl in Supp. of Def.'s Mot. to Strike ("Kneissl Decl.") ¶ 4.) Gangland "explores the history of some of America's most notorious gangs and the efforts of law enforcement agencies to stop them." (Decl. of Julie Hughes in Supp. of Def.'s Mot. to Strike ¶ 3.) The episode of Gangland at issue is titled "Snitch Slaughter" (hereinafter referred to as "the episode"). Defendant lodged a Digital Video Disc copy and transcript of the episode with the Court. This evidence is part of the record concerning the anti-SLAPP motion and has been considered.

The episode profiles a gang called the Vagos Outlaw Motorcycle Club ("Vagos Gang"). The Vagos Gang is described in the episode as "one of America's biggest biker gangs" whose members "commit robberies," "rapes," and "murders." The episode describes the history and traditions of the Vagos Gang, and how some of its members act as informants for law enforcement agencies. A Vagos Gang member named Lonesome is interviewed periodically in the episode. Lonesome is described as a "thief," "assassin," and "professional snitch with deep ties to the law." Lonesome is donning a short, brown, goatee-style mustache and beard in

1  the episode. He also is wearing a bandana on top of his head and sunglasses.

2          The only depiction of Plaintiff in the episode is in a
3  photograph of Plaintiff standing next to Yak Yak, the Vagos Gang's
4  Sacramento Chapter President. Plaintiff is not mentioned by name during
5  the episode. The photograph is shown briefly twice in the episode. In
6  this photograph, Plaintiff and Yak Yak are facing the camera, and Yak
7  Yak's arm is around Plaintiff's shoulder. Plaintiff's eyes and the area
8  surrounding his eyes are covered by a black bar, and Plaintiff is
9  donning a long, white beard and is wearing a black top hat. Yak Yak has
10 a shorter beard and is wearing a bucket hat. Yak Yak's face is not
11 covered by a black bar in any way, but he is wearing sunglasses.
12 Plaintiff alleges: "The . . . photograph was taken . . . at a picnic
13 held in 2000 or 2001 at Rollins Lake, in Nevada County, California,
14 during a mountain campout of the Grandfather's Motorcycle Club." (FAC ¶
15 11.)

16         The photograph first appears approximately three-quarters of
17 the way into the episode during a segment describing a plan by Vagos
18 Gang members to kill a drug dealer at his house and steal his money. The
19 pertinent dialogue of this segment is as follows:

20         NARRATOR: In October 2004, the Vagos asked Lonesome
21                    to be part of another home invasion. The
22                    plan was to meet at a tattoo parlor in
                    Sacramento. The Vagos Chapter President,
                    Yak Yak, was there to give the thieves
23                    their mission.

24         LONESOME: Yak and they were talking about this guy,
25                    had a lot of money and had a lot of weed.
                    They wanted to kill the guy, take his
26                    money, kill his girlfriend if she was
                    there.

27         NARRATOR: Yak Yak and the Vagos suspected the
28                    dealer was holding $300,000. Lonesome was
                    told to find and execute him. That
                    afternoon, Lonesome spotted his target
                    leaving a local store but reported back

4

|   |   |
|---|---|
|   | to Yak Yak that he had lost his target in traffic. |
| LONESOME: | I came back to the tattoo shop. They found out that this guy had been tipped off by detectives that he was going to be killed, that there was a hit out on him or he was going to be robbed and murdered. |
| NARRATOR: | The Vagos realized they had a snitch in their ranks. |

The photograph is shown while the narrator states the following six words from the above-excerpted dialogue: "Yak Yak and the Vagos suspected[.]" This segment of the episode also shows Lonesome while he is being interviewed, and multiple still pictures of Yak Yak.

The second time the photograph is shown is approximately two minutes after the first showing, during a segment describing Yak Yak's plan to kill another member of the Vagos Gang. The pertinent dialogue of this segment is as follows:

|   |   |
|---|---|
| NARRATOR: | Yak Yak was convinced Lonesome wasn't a snitch. He gave him a new assignment, asking him to take out another member, Big Wood, who was one of the leader's best friends. |
| LONESOME: | It was greed on Yak's part totally. |
| NARRATOR: | Yak Yak wanted Big Wood killed because he had just scored a huge drug deal and was holding a lot of money. |
| LONESOME: | He wanted somebody to literally blow Big Wood's head off, you know, and he didn't want - you know, he didn't want him to be able to see his face during the funeral. |

The photograph specifically appears after Lonesome says "totally" and is removed after the narrator says "Yak Yak" but before the narrator says "wanted." Just before the narrator says "Yak Yak," the camera zooms in

5

on Yak Yak's face in the photograph, which almost completely obscures Plaintiff's face.

Plaintiff alleges in the FAC:

> The broadcasts [of the episode] were defamatory . . . because Plaintiff was falsely depicted in [the episode] as a criminal member, associate or affiliate of the Vagos, a gang asserted to have been culpable of numerous crimes and criminal activities, and/or as the man ("Lonesome") who was being hired to commit one or more murders by assassination or other means by "Yak Yak" and/or the Vagos. Additionally, Plaintiff was falsely depicted in the broadcasts as a "professional snitch[.]"
>
> Th[e] broadcasts were false because Plaintiff has never been a member, associate or affiliate of the Vagos. The broadcasts were false because Plaintiff has never been solicited by Yak Yak or any Vagos member, associate or affiliate, to commit any crime, and has never committed any crime other then traffic related matters. Plaintiff has never been a "snitch" or informant. Plaintiff is not the man identified in the Broadcasts as "Lonesome", and has never used, or been known by, that name or identification.

(FAC ¶¶ 13, 14.)

### III. Discussion

**A. Protected Activity**

Defendant argues its broadcast of the episode showing the picture of Plaintiff and Yak Yak is a protected activity under the fourth, catch-all category of the anti-SLAPP statute. Defendant "has the initial burden of establishing a prima facie case" that its activity is within this catch-all category by showing that its broadcast of the episode was "in furtherance of defendant's right of . . . free speech in connection with a public issue." M.G. v. Time Warner, Inc., 89 Cal. App. 4th 623, 629 (2001).

Defendant's broadcast of the Gangland episode constitutes an activity conducted "in furtherance of" Defendant's exercise of its right

to free speech, since "[t]he creation of a television show is an exercise of free speech." <u>Tamkin v. CBS Broad., Inc.</u>, 193 Cal. App. 4th 133, 143 (2011). Further, Defendant's broadcast of the episode also was in connection with an issue of public interest, since the episode concerned the topic of gang-related criminal activity, which, like child molestation and domestic violence, "is significant and of public interest." <u>M.G. v. Time Warner, Inc.</u>, 89 Cal. App. 4th at 629 (finding that the "general topic" of child molestation "is significant and of public interest"); <u>Sipple v. Found. For Nat'l. Progress</u>, 71 Cal. App. 4th 226, 238 (1999) (finding that domestic violence "is an extremely important public issue in our society"). Since Defendant has demonstrated its challenged activity arises from a protected activity, it is next decided "whether [P]laintiff[] ha[s] demonstrated a reasonable probability of success" on his defamation claim. <u>M.G. v. Time Warner, Inc.</u>, 89 Cal. App. 4th at 629.

**B. Probability of Prevailing on the Merits**

Defendant argues Plaintiff has not shown a probability of prevailing on his defamation claim, since "neither the photo [of Plaintiff and Yak Yak] nor its inclusion in the [episode] implies that Plaintiff was involved in criminal activities or [was] a police informant[; n]or . . . that Plaintiff was a member of the Vagos[.]" (Defs.' Special Mot. to Strike Pl.'s Am. Compl. ("Mot.") 17:18-20.) Defendant also argues it is not reasonable to interpret the episode as conveying that "Plaintiff is Lonesome." (Def.'s Reply in Supp. of Special Mot. to Strike Pl.'s Am. Compl. 17:17.) Defendant further argues "that the picture relays the true fact that [Plaintiff] posed for a picture with Yak Yak." (Mot. 14:8-9.)

Plaintiff counters:

7

> [A]n objective review of the entire program, and the context in which [the] photograph appears (twice) will leave this Court, and all but the most adversarial viewers, with the reasonable interpretation that [Plaintiff] was defamed . . . by the reckless conduct of [Defendant], which depicts him as "Lonesome", and/or as a man who is being willingly solicited to commit or be involved in murder, and as an informant.

(Pl.'s Opp. to Def.'s Special Mot. to Strike 15:12-18.)

"Defamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (1999). "[A]n alleged defamatory statement [made in a television broadcast] is actionable only if the statement, 'considered within the context of the entire broadcast,' could be reasonably interpreted in the manner alleged by the plaintiff." Balzaga v. Fox News Network, LLC, 173 Cal. App. 4th 1325, 1339 (2009) (quoting Monterey Plaza Hotel v. Hotel Emps. & Rest. Emps., 69 Cal. App. 4th 1057, 1065 (1999)). "If no reasonable viewer could have reasonably understood the statement in the alleged defamatory sense, the matter may be decided as a question of law." Id.

Plaintiff has not shown a probability of prevailing on his defamation claim. The episode cannot reasonably be interpreted as depicting Plaintiff as Lonesome. Plaintiff's features in the photograph do not resemble Lonesome's features. In addition, no statement is made in the episode that the picture of Plaintiff and Yak Yak is actually a picture of Lonesome and Yak Yak. Nor can it be implied from the context of the entire episode that Plaintiff was depicted as Lonesome. See Alszeh v. Home Box Office, 67 Cal. App. 4th 1456, 1462-63 (1998) (finding television documentary showing picture of Plaintiff on a

8

billboard while audio voice states: "With Cookie on my mind, I imagined I saw him everywhere," could not reasonably be interpreted as identifying Plaintiff and Cookie as the same person; "the documentary raises the possibility that two people are the same, but the documentary, taken as a whole, does not support the reasonable inference that the individuals are identical.").

Nor can the episode be reasonably interpreted as depicting Plaintiff as a "professional snitch." Plaintiff is not expressly referred to as a snitch, and it cannot be reasonably implied from the context of the entire episode that Plaintiff is a snitch.

Nor has Plaintiff shown a probability of prevailing on the portion of his defamation claim in which he alleges he "was falsely depicted . . . as a criminal member, associate or affiliate of the Vagos[.]" (FAC ¶ 13.) Although it is unclear what Plaintiff means by the terms "member," "associate," or "affiliate," if these terms convey that Plaintiff was depicted as being acquainted with or fraternizing with Vagos Gang members, it is undisputed that Yak Yak is a Vagos gang member, and "the photograph" of Plaintiff and Yak Yak "was taken" . . . at a picnic . . . during a mountain campout of the Grandfather's Motorcycle Club." Id. ¶ 11. The photograph shows he surely did "associate" or "affiliate" with Yak Yak when the photograph was taken.

Plaintiff also has not shown a probability of prevailing on his defamation claim to the extent he alleges the episode conveys he was involved in the criminal activities of the Vagos Gang, since the episode cannot reasonably be interpreted as Plaintiff argues. Yak Yak is identified as a Vagos Gang member, and the narrator mentions Yak Yak's name each time the photograph appears. Tellingly, Plaintiff points to nothing in the record suggesting that the episode cast him in a false

light. Plaintiff's eyes and the area surrounding his eyes are covered by a black bar each time the photograph is shown, and the camera zooms in on Yak Yak's face the second time the photograph is shown. Under these circumstances, the broadcast cannot be reasonably interpreted as conveying that Plaintiff was involved in the criminal activities of the Vagos Gang. See Prince v. Viacom, Inc., No. H-07-4274, 2008 WL 1782288, at *2 (S.D. Tex. Apr. 18, 2008) (finding television program showing photograph of plaintiffs posing with gang member while visiting gang member in prison could not reasonably be interpreted to convey that plaintiffs "were linked to the illegal activity" of the gang member; "[n]one of the statements mentions [plaintiffs]. . . . [R]easonable viewer[s] . . . would not know what crime they had helped [the gang member] commit. The picture accurately represented [the gang member] and two visitors[.]").

For the stated reasons, Plaintiff has not shown a probability of prevailing on his defamation claim. Therefore, Defendant's anti-SLAPP motion is granted, and the FAC is dismissed with prejudice. See Flores v. Emerich & Fike, No. 1:05-CV-0291-OWW-DLB, 2006 WL 2536615, at *10 (E.D. Cal. Aug. 31, 2006) (stating leave to amend "is not appropriate" if an anti-SLAPP motion is granted).

**IV. Conclusion**

Defendant's anti-SLAPP motion is granted, and Plaintiff's FAC is dismissed with prejudice. Judgment shall be entered in favor of Defendant.

Dated:  September 2, 2011

GARLAND E. BURRELL, JR.
United States District Judge